

**AARON D. FORD**
*Attorney General*

CRAIG A. NEWBY
*First Assistant Attorney General*

CHRISTINE JONES BRADY
*Assistant Attorney General*

LESLIE NINO PIRO
*General Counsel*

HEIDI PARRY STERN
*Solicitor General*

STATE OF NEVADA

OFFICE OF THE ATTORNEY GENERAL

1 State of Nevada Way, Suite 100
Las Vegas, Nevada 89119

March 18, 2026

Via ECF

Molly Dwyer, Clerk of Court
United States Court of Appeals for the Ninth Circuit
95 Seventh Street
San Francisco, CA 94103

Re:  *North American Derivatives Exchange, Inc. v. State of Nevada*, No. 25-7187
*Robinhood Derivatives, LLC v. Dreitzer*, No. 25-7831
*KalshiEX, LLC v. Assad*, 9th Cir. No. 25-7516

Dear Ms. Dwyer:

I write to inform the Court of the recent decision in *QCX LLC v. Nessel*, No. 26-cv-710 (W.D. Mich. Mar. 10, 2026) (attached). Like Plaintiffs in these cases, QXC LLC (d/b/a Polymarket) operates a prediction market on which users can wager on sports events. Op. 2–3. Polymarket sued Michigan's attorney general and gaming regulators, seeking a temporary restraining order (TRO) and a preliminary injunction to prevent them from enforcing Michigan's gaming laws against it. *Id.* at 3. Polymarket argues that the Commodity Exchange Act (CEA) preempts application of Michigan's gaming laws to its contracts. *Id.*

The district court rejected that argument and denied the request for a TRO. Op. 1. Like the district court in this case, the district court in Michigan held that sports-event contracts are not "swaps" subject to the CFTC's jurisdiction under 7 U.S.C. § 2(a)(1)(A). *Id.* at 4–7. The court explained that sports-event contracts do not qualify as "swaps" under the CEA's definition of that term, because they do not pay out based on the occurrence of "events" or "contingencies," and they are not associated with "potential financial, economic, or commercial consequence[s]." *Id.* at 4–6. The court explained that the plaintiff's "radical" interpretation of those terms, if accepted, would "expand[] [the]

Molly Dwyer, Clerk of Court
Page 2
March 18, 2026

reach" of the statute "beyond any logical limit*." Id.* at 4–5. The court also rejected Polymarket's position because it is "contrary to legislative intent regarding the statute's interaction with gambling" and would "have wide-reaching consequences for other federal legislation not clearly spoken to in the legislative text." *Id.* at 5.

That reasoning applies directly in this case. Indeed, the federal court in Michigan relied heavily on the district court's decision in this case, finding it "persua[sive]." Op. 7.

Thank you for your consideration of this additional material.

Respectfully,

*/s/ Jessica E. Whelan*
Jessica E. Whelan
Chief Deputy Solicitor General—Litigation
(702) 486-3420
jwhelan@ag.nv.gov