<table>
<tr><td>CRAIG A. NEWBY<br><i>First Assistant Attorney General</i></td><td><b>AARON D. FORD</b><br><i>Attorney General</i></td><td>LESLIE NINO PIRO<br><i>General Counsel</i></td></tr>
<tr><td>CHRISTINE JONES BRADY<br><i>Assistant Attorney General</i></td><td></td><td>HEIDI PARRY STERN<br><i>Solicitor General</i></td></tr>
</table>



STATE OF NEVADA

OFFICE OF THE ATTORNEY GENERAL

1 State of Nevada Way, Suite 100
Las Vegas, Nevada 89119

March 27, 2026

Via ECF

Molly Dwyer, Clerk of Court
United States Court of Appeals for the Ninth Circuit
95 Seventh Street
San Francisco, CA 94103

Re:   *N. Am. Derivatives Exch. Inc. v. Nevada*, 9th Cir. No. 25-7187
      *KalshiEX, LLC v. Assad*, 9th Cir. No. 25-7516
      *Robinhood Derivatives, LLC v. Dreitzer*, 9th Cir. No. 25-7831

Dear Ms. Dwyer:

I write to inform the Court of the recent decision in *State of Nevada ex rel. Nevada Gaming Control Board v. Coinbase Financial Markets, Inc.*, No. 260C000301B (Nev. 1st JD Dist. Ct. Mar. 26, 2026) (attached). Like Plaintiffs in these cases, Coinbase Financial Markets, Inc. (Coinbase) operates a prediction market on which users can wager on sports, election, and entertainment events. Op. 1-3. Coinbase is not licensed in Nevada and does not comply with Nevada gaming law. *Id.* at 3. The Nevada Gaming Control Board (Board) brought a state enforcement action and sought a preliminary injunction to bar Coinbase's unlawful operations. *Id.* at 2. Coinbase argued that the Commodity Exchange Act (CEA) preempts application of Nevada's gaming laws to its contracts. *Id.* at 4.

The state court rejected Coinbase's argument and entered a preliminary injunction prohibiting Coinbase from offering sports-, election-, and entertainment-related event contracts in Nevada. Op. 4-6. On the question whether the CEA preempts Nevada gaming law, the state court specifically relied on the reasoning of the district court in this case, finding it "persuasive." *Id.* at 5. The court explained that the CEA, "fairly interpreted, does not vest exclusive jurisdiction over event contracts traded through COINBASE's platform with the Commodity Futures Trading Commission." *Id.*

Molly Dwyer, Clerk of Court
Page 2
March 27, 2026

The state court also concluded that Coinbase's continued unlawful operations "cause immediate and irreparable harm" to the State, its gaming industry, and the public. Op. 5-6. The court explained that Coinbase does not comply

with the Nevada laws that prevent people under 21 from betting; that prevent owners, coaches, players, and officials from betting on games; and that prevent unsuitable individuals from being involved in gaming. *Id.* at 5. The court concluded that "these injuries cannot be mitigated, much less restored, by compensatory damages after the injury is incurred." *Id.* The court also held that "the balance of hardships and the public interest in maintaining meaningful control over Nevada's gaming industry for the purpose of ensuring its integrity strongly supports issuances of a preliminary injunction." *Id.* at 6. Those conclusions echo the findings of the district court in these cases.

Respectfully,

*/s/ Jessica E. Whelan*
Jessica E. Whelan
Chief Deputy Solicitor General—Litigation
(702) 486-3420
jwhelan@ag.nv.gov

# EXHIBIT A

AARON D. FORD
  Attorney General
Jessica E. Whelan (Bar No. 14781)
  Chief Deputy Solicitor General - Litigation
John S. Michela (Bar No. 8189)
  Senior Deputy Attorney General
Sabrena K. Clinton (Bar No. 6499)
  Senior Deputy Attorney General
State of Nevada
Office of the Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
(702) 486-3420 (phone)
(702) 486-3773 (fax)
jwhelan@ag.nv.gov
jmichela@ag.nv.gov
sclinton@ag.nv.gov

REC'D & FILED

2026 MAR 26 AM 7: 56

WILLIAM SCOTT HOEN
CLERK

BY_____
             DEPUTY

*Attorneys for Plaintiff*

## IN THE FIRST JUDICIAL DISTRICT COURT OF
## THE STATE OF NEVADA IN AND FOR CARSON CITY

| | |
|---|---|
| STATE OF NEVADA ex rel. NEVADA GAMING CONTROL BOARD,<br><br>     Plaintiff,<br><br>vs.<br><br>COINBASE FINANCIAL MARKETS, INC.,<br><br>     Defendant. | Case No. 26 0C 00030 1B<br><br>Dept. No. II |

**ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

This matter having come before the Court for hearing on February 17, 2026 on Plaintiff, STATE OF NEVADA, ex rel. NEVADA GAMING CONTROL BOARD's ("BOARD") Motion for Preliminary Injunction. Jessica E. Whelan, Chief Deputy Solicitor General—Litigation, Nevada Office of the Attorney General, appeared on behalf of the BOARD and Yaira Dubin of Sullivan and Cromwell appeared on behalf of COINBASE FINANCIAL MARKETS, INC. ("COINBASE").

///

On February 5, 2026, this Court granted the BOARD's Ex Parte Application for Temporary Restraining and issued a Temporary Restraining Order prohibiting COINBASE from offering or facilitating the offering of event contracts in Nevada for a period of 14-days from the date of the order.

On February 20, 2026, this Court signed a stipulation and order granting the Parties' request to extend the effectiveness of the Temporary Restraining Order for seven days to and including February 26, 2026. This Court then signed additional stipulations and orders granting the Parties requests to extend the effectiveness of the Temporary Restraining Order through March 9, 2026.

The Court, having reviewed the pleadings and papers on file and having considered the oral arguments of counsel, hereby **FINDS** and **CONCLUDES** as follows:

The Board seeks to preliminarily restrain and enjoin COINBASE and any of its agents, employees, officers, or affiliates from operating a derivative exchange and prediction market that offers event-based contracts relating to sporting, election, and other events to people within Nevada without obtaining all required Nevada gaming licenses, and from allowing its market to accept wagers from person under the age of 21.

Under Nevada law, a preliminary injunction is authorized when it "appear[s] by the complaint that the plaintiff is entitled to the relief demanded"; the relief involves "restraining the commission or continuance of the act complained of" (NRS 33.010 (1)); and when "the commission or continuance of some act . . . would produce great or irreparable injury to the plaintiff." NRS 33.010 (2); *Posner v. U.S. Bank N.A.,* 140 Nev. Adv. Op. 22, 545 P.3d 1150, 1152 (2024)(holding injunctive relief is "'proper where the moving party can demonstrate that it has a reasonable likelihood of success on the merits and that, absent [such relief], it will suffer irreparable harm for which compensatory damages would not suffice.'" (*quoting Excellence Cmty. Mgmt., LLC v. Gilmore,* 131 Nev. 347, 351, 351 P.3d 720, 722 (2015)).

In addition, the balance of hardships and public interest may be considered in determining whether injunctive relief is warranted and, if so, the scope and nature of that

relief. *University & Cmty. College Sys. of Nev. v. Nevadans for Sound Gov 't,* 120 Nev. 712, 721, 100 P.3d 179, 187 (2004).

## I. The BOARD is reasonably likely to prevail on the merits of the underlying case.

As a threshold matter, the BOARD has demonstrated that it has a "reasonable likelihood of success on the merits."

**First,** the Complaint (Compl., pp. 2–3) and Motion for Preliminary Injunction (Mot., pp. 2–3) establish that gaming in Nevada is expansively and strictly regulated. The BOARD, in conjunction with the Nevada Gaming Commission, has virtually comprehensive statutory authority over gaming in Nevada. *See generally* Nev. Rev. Stat. ch. 463. The strict regulation of gaming promotes the public interest in several respects, including the prevention of underage gambling, preservation of the integrity of the events which are the subject of gaming wagers, and exclusion of unsuitable individuals from gaming activities. NRS 463.166, .350, *Nev. Gam 'g Comm. Reg.* 22.1205(2). Gaming in Nevada may only be conducted by an entity licensed under the authority of the Nevada Gaming Control Act. NRS 463.160

**Second,** "gaming" as used in Nevada law includes a "percentage game," and a "wager" in a "sports pool." NRS 493.0152, .0193, .01962. "Percentage games are . . . games where patrons wager against each other and the house takes a percentage of each wager as a 'rake-off.'" *Hughes Properties v. State,* 100 Nev. 295, 297, 680 P.2d 970, 971 (1984). A "wager" is "a sum of money or representative of value that is risked on an occurrence for which the outcome is uncertain." NRS 463.01962. And a "sports pool" is "the business of accepting wagers on sporting events or other events by any system or method of wagering." NRS 463.0193.

**Third,** the record at this early stage in the proceedings indicates COINBASE is not licensed under the Nevada Gaming Control Act. COINBASE does not dispute this finding.

**Fourth,** the record at this early stage in the proceedings indicates COINBASE facilitates access to "event-based contracts" that relate to sporting and other events,

including college basketball games, college and professional football games and elections. COINBASE does not dispute this finding.

Under Nevada law, this conduct constitutes the operation of a "sports pool" as it involves the acceptance of "wagers" concerning "sporting events or other events" "for which the outcome is uncertain." Further, the record indicates COINBASE takes a commission on contracts purchased through its system, meaning it is operating a "percentage game" as defined in Nevada law.

**Finally**, the Court has considered COINBASE's contentions that it offers Nevada users the ability to trade event contracts on its platform through a partnership with KalshiEX, LLC ("Kalshi"), a CFTC-registered exchange that lists event contracts for trading; that COINBASE is a CFTC intermediary between COINBASE customers and Kalshi's exchange acting as execution and clearing agent that facilitate access to markets; that Nevada gaming laws are preempted with respect to the event contracts offered on a federally regulated exchange; and that the CEA grants the CFTC exclusive jurisdiction to regulate "transactions involving swaps traded or executed on a [federally designated] contract market." 7 U.S.C. § 2 (a)(1)(A).

The question of federal preemption in this regard is nuanced and rapidly evolving. At the moment, the balance of convincing legal authority weighs against federal preemption in this context. *See KalshiEx, LLC v. Hendrick*, No. 2:25-cv-00575-APG-BNW, 2025 U.S. Dist. LEXIS 234246 at *11-38 (D. Nev. Nov. 24, 2025) [hereinafter referred to as "*KalshiEx*"]; *see also North American Derivatives Ex., Inc. v. Nev. Gaming Control Bd.*, No. 2:25-cv-00978-APG-BNW, 2025 U.S. Dist. LEXIS 466366 (D. Nev. Oct. 14, 2025) (holding contracts based on outcome of sporting events are not "swaps" under the Commodity Exchange Act and are not subject to exclusive jurisdiction of CFTC), *KalshiEx, LLC v. Martin*, No. 25-cv-1283-ABA, 793 F. Supp. 3d 667, 2025 U.S. Dist. LEXIS 147815 (D. Maryland Aug. 1, 2025) (holding state law not preempted by Commodity Exchange Act as applied to sports-related event contracts). *But see KalshiEx, LLC v. Flaherty*, No. 25-cv-02152-ESK-MJS, 2025 U.S. Dist. LEXIS 79893 (D.N.J. April 28, 2025) (holding state law

preempted by Commodity Exchange Act as applied to sports-related event contracts); *KalshiEx, LLC v. William Orgel et al.*, No. 3:26-cv-00034, 2026 WL 474869 (M.D. Tenn. Feb. 19, 2026)(state law likely conflict preempted by the Commodity Exchange Act as applied to sports-related event contracts). The reasoning in *KalshiEx* is persuasive. Therefore, this Court concludes that based on the current state of the law, the Commodities Exchange Act, more specifically 7 U.S.C. §2(a)(l)(A), fairly interpreted, does not vest exclusive jurisdiction over event contracts traded through COINBASE's platform with the Commodity Futures Trading Commission. As such, Nevada law is not preempted, and the BOARD has authority to prosecute the enforcement action presented by the Complaint and Motion for Preliminary Injunction.

## II.    The BOARD's injuries are irreparable and non-compensable.

COINBASE's wrongful acts cause immediate and irreparable harm to Nevada's "comprehensive regulatory structure" and "strict licensing standards." Such harm is not sufficiently remediable by compensatory damages. The BOARD has a statutory duty to protect the public and advance Nevada's interest in administering a reputable gaming industry with integrity. In furtherance of that duty, the BOARD is obliged to consistently and equitably monitor and enforce regulatory and statutory compliance among all industry participants and protect the health, safety, morals, good order, and general welfare of gaming consumers. An unlicensed participant beyond the BOARD's control, such as COINBASE, obstructs the BOARD's ability to fulfill its statutory functions. For example, the BOARD lacks authority to ensure that wagers are not being accepted by COINBASE from owners, coaches, players or officials who are in a position to influence the outcome of a sporting event. The BOARD also has no means to ensure that individuals under the age of 21 are not allowed to purchase COINBASE's contracts and no ability to enforce any sanction against COINBASE if it determined this to be the case. Additionally, the BOARD has no way to know if unsuitable individuals are involved with COINBASE's activities in Nevada, much less prevent such involvement. By their nature, these injuries cannot be mitigated, much less restored, by compensatory damages after the injury is incurred. The

fact that Kalshi is not currently enjoined from offering event contracts in Nevada does not negate the harm caused by COINBASE's facilitation of event contracts absent a preliminary injunction.

These potential consequences must be characterized as irreparable under Nevada law. As such, they support issuance of a preliminary injunction against COINBASE.

**III.    The balance of hardships and public interest weigh in favor of issuing the preliminary injunction.**

Largely for the reasons that have already been explained above, the balance of hardships and public interest in maintaining meaningful control over Nevada's gaming industry for the purpose of ensuring its integrity strongly supports issuance of a preliminary injunction.

**IV.    No security is required.**

A party who is the beneficiary of a preliminary injunction is typically required to post security for damages resulting from wrongful issuance of the preliminary injunction. NRCP 65(c). However, the BOARD, as an agency of the State of Nevada, is exempted from that typical requirement. *Id.* Therefore, no security will be required.

Therefore, good cause appearing,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Preliminary Injunction filed on February 2, 2026 is **GRANTED.** COINBASE is preliminarily prohibited from offering or facilitating the offering of the following categories of event contracts within the geographic boundaries of the State of Nevada:

- Sports-related event contracts, including event contracts involving the outcome of sporting events or any element of any sporting event (i.e., props) or any combination of elements or outcomes of sporting events (i.e., parlays).
- Election-related event contracts.
- Entertainment-related event contracts (i.e., event contracts relating to movies, music, awards, video games, esports, and similar areas that fall under COINBASE's "Entertainment" tab on its platform).

COINBASE will have sixty (60) days from the date of this Order to make technological enhancements necessary to comply with the terms of this order. During the pendency of those sixty days, COINBASE will prevent users identified as Nevada residents from entering sports-, election-, and entertainment-related event contracts on its platform, as described above.

**IT IS SO ORDERED.**

DATED: *March 26, 2026*

_____
DISTRICT JUDGE