

**McDONALD CARANO**

April 10, 2026

<u>**Via ACMS**</u>

Ms. Molly Dwyer
Clerk of the Court
U.S. Court of Appeals for the Ninth Circuit
95 Seventh Street
San Francisco, CA 94119-3939

> **Re:** **Response of Appellee Nevada Resort Association (NRA) to Supplemental-Authorities Letters in Nos. 25-7187, 25-7516, and 25-7831 concerning *Kalshi EX, LLC v. Flaherty*, 2026 WL 924004 (3d Cir. Apr. 6, 2026)**

Dear Ms. Dwyer:

The *Flaherty* majority opinion does not sufficiently analyze the statutory text or governing preemption principles.

First, it concluded, without reference to any specific contract, that Kalshi's contracts are "swaps" because "the outcome of a sports event certainly *can be* associated with" potential economic consequences. Op.8 (emphasis added). That superficial analysis is insufficient: Appellants seek preemption for *all* contracts, and thus must show that *all* qualify. The majority did not address the vast number of sport event contracts that self-evidently are not associated with potential economic consequences, such as point spreads, point totals, or 30-leg basketball parlays.[1] For the majority, these bets are all "swaps," a result untethered from the statutory text and context.

Second, the majority concluded that Congress preempted state law governing wagering "on DCMs," but permitted states to regulate "trades … off DCMs." Op.15. This is incorrect because the statute requires all swaps to be exchange-traded. NRA Crypto.com Br.42-43.

Third, the majority ignored principles like the Major Questions Doctrine, which call for common sense interpretation and confirm that Congress enacted Dodd-Frank to regulate swaps like those that caused the 2008 financial crisis—not to make the CFTC the nation's sole sports betting regulator. *Id.*32-44.

---

[1] Dustin Gouker, *Kalshi Was Promoting a 30-Leg Parlay to Users on Tuesday*, Event Horizon (Apr. 1, 2026), https://perma.cc/8Z9S-P5AN; *see* https://kalshi.com/markets/kxuclcorners/ucl-corners/kxuclcorners-26apr08baratm (number of corner kicks in soccer match).

mcdonaldcarano.com
100 West Liberty Street • Tenth Floor • Reno, Nevada 89501 • P: 775.788.2000
2300 West Sahara Avenue • Suite 1200 • Las Vegas, Nevada 89102 • P: 702.873.4100
☰ MERITAS
LAW FIRMS WORLDWIDE



Finally, the majority improperly bypassed the presumption against preemption and cited no evidence that Congress sought to preempt states' traditional police power over gambling. It is irrelevant that "the federal government has regulated" "derivatives market[s] for over a century," Op.14, because before 2025, those markets *never* offered sports wagers. *See* 77 Fed. Reg. 48,208, 48,212, 48,246-50 (Aug. 13, 2012) (consumer and insurance contracts are not swaps, even if they "could be viewed as falling within the definitio[n]," because they "historically have not been considered swaps"). The statute's savings clauses create a "Swiss cheese-like field" that cannot justify field preemption. Dissent.12-13. And conflict preemption fails because state laws "complement" federal objectives—especially since applicable regulations prohibit gaming contracts. 17 C.F.R. § 40.11(a); Dissent.17-18.

Respectfully submitted,

*/s/ Adam Hosmer-Henner*

Adam Hosmer-Henner

*Counsel for Intervenor-Defendant-*
*Appellee Nevada Resort Association*

cc:    Counsel of Record (via ACMS)